UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:23-cr-434 (TSC) |
| | : | |
| ANTHONY MASTANDUNO, | : | |
| | : | |
| Defendant. | : | |

## JOINT SUBMISSION IN SUPPORT OF GUILTY PLEA

On February 13, 2024, the Defendant notified the Court that he intended to plead guilty to all of the crimes charged against him. ECF 26.  For the Court's benefit, the parties provide the following written submission including the elements of each offense in the indictment (updated version at ECF 35), the factual basis supporting the charges, the maximum penalties for each offense of conviction, and each party's estimate of the defendant's applicable Sentencing Guidelines range.

### I.   Background.

On December 13, 2023, a grand jury returned a nine-count indictment in the above-captioned case. ECF 21, 35. The indictment charges the defendant with:

- Count One: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);

- Count Two: Assaulting, Resisting or Impeding Certain Officers Using a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b);

- Count Three: Assaulting, Resisting or Impeding Certain Officers Using a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b);

- Count Four: Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A);

- Count Five: Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A);

- Count Six: Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A);

- Count Seven: Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D);

- Count Eight: Act of Physical Violence in the Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(F);

- Count Nine: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

**II.  Elements and Maximum Penalties of Each Offense.**

*A.  Count One: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).*

To prove that the defendant is guilty of Civil Disorder in violation of 18 U.S.C. § 231(a)(3), the government must prove the following beyond a reasonable doubt:

1. That the defendant committed or attempted to commit any act to obstruct, impede or interfere with any law enforcement officer;
2. That the law enforcement officer was lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder; and
3. That the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

Title 18, United States Code, Section 232(3) defines "federally protected function" as "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof."

The maximum penalties for Civil Disorder are:

1. A term of imprisonment of not more than 5 years;
2. A term of supervised release of not more than 1 year;
3. A fine not to exceed $250,000; and
4. A special assessment of $100.

### B. *Counts Two and Three: Assaulting, Resisting or Impeding Certain Officers Using a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).*

To prove that the defendant is guilty of Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1), the government must prove the following beyond a reasonable doubt:

1. That the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government;
2. That the defendant did so with some use of force;
3. That the defendant did so while the officer or employee was engaged in or on account of the performance of official duties; and
4. That the assault involved physical contact with the victim or the intent to commit another felony.

To prove that the defendant is also guilty of using a deadly or dangerous weapon in violation of 18 U.S.C. § 111(b), the government must prove both the above-listed elements, as well as the following element, beyond a reasonable doubt:

5. That, in the commission of any acts described in subsection (a), the defendant used or carried a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicted bodily injury.

An object is a "deadly or dangerous weapon" if it is capable of causing serious bodily injury or death to another person and the defendant used it in that manner.

The maximum penalties for Assaulting, Resisting, or Impeding Certain Officers Using a Deadly or Dangerous Weapon are:

1. A term of imprisonment of not more than 20 years;
2. A term of supervised release of not more than 3 years;
3. A fine not to exceed $250,000; and
4. A special assessment of $100.

### C. Count Four: Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A).

To prove that the defendant is guilty of Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1), the government must prove the following beyond a reasonable doubt:

1. That the defendant knowingly entered or remained in any restricted building or grounds without lawful authority to do so.

Title 18, United States Code, Section 1752(c)(1)(B) defines "restricted building or grounds" as "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." Section 1752(c)(2) further defines "other person protected by the Secret Service" as "any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection."

To prove that the defendant is also guilty of using or carrying a deadly or dangerous weapon in violation of 18 U.S.C. § 1752(b)(1)(A), the government must prove both the above-listed element, as well as the following element, beyond a reasonable doubt:

2. That, in the commission of any acts described in subsection (a), the defendant used or carried a deadly or dangerous weapon or firearm.

An object is a "deadly or dangerous weapon" if it is capable of causing serious bodily injury or death to another person and the defendant used it in that manner.

The maximum penalties for Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon are:

1. A term of imprisonment of not more than 10 years;
2. A term of supervised release of not more than 3 years;
3. A fine not to exceed $250,000; and
4. A special assessment of $100.

### D.  Count Five: Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A).

To prove that the defendant is guilty of Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), the government must prove the following beyond a reasonable doubt:

1. That the defendant engaged in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds;
2. That such conduct occurred when, or so that, such conduct, in fact, impeded or disrupted the orderly conduct of Government business or official functions; and
3. That the defendant did so knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions.

To prove that the defendant is also guilty of using or carrying a deadly or dangerous weapon in violation of 18 U.S.C. § 1752(b)(1)(A), the government must prove both the above-listed elements, as well as the following element, beyond a reasonable doubt:

4. That, in the commission of any acts described in subsection (a), the defendant used or carried a deadly or dangerous weapon or firearm.

An object is a "deadly or dangerous weapon" if it is capable of causing serious bodily injury or death to another person and the defendant used it in that manner.

The maximum penalties for Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon are:

1. A term of imprisonment of not more than 10 years;
2. A term of supervised release of not more than 3 years;
3. A fine not to exceed $250,000; and
4. A special assessment of $100.

**E. Count Six: *Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A).***

To prove that the defendant is guilty of Engaging in Physical Violence in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(4), the government must prove the following beyond a reasonable doubt:

1. That the defendant knowingly engaged in any act of physical violence against any person or property in any restricted building or grounds.

To prove that the defendant is also guilty of using or carrying a deadly or dangerous weapon in violation of 18 U.S.C. § 1752(b)(1)(A), the government must prove both the above-listed element, as well as the following element, beyond a reasonable doubt:

2. That, in the commission of any acts described in subsection (a), the defendant used or carried a deadly or dangerous weapon or firearm.

An object is a "deadly or dangerous weapon" if it is capable of causing serious bodily injury or death to another person and the defendant used it in that manner.

The maximum penalties for Engaging in Physical Violence in a Restricted Building or Grounds are:

1. A term of imprisonment of not more than 10 years;
2. A term of supervised release of not more than 3 years;
3. A fine not to exceed $250,000; and
4. A special assessment of $100.

**F. Count Seven: *Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D).***

To prove that the defendant is guilty of Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D), the government must prove the following beyond a reasonable doubt:

1. That the defendant uttered loud, threatening, or abusive language, or engaged in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings; and

2. That the defendant engaged in such actions with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress.

Title 40, United States Code, Section 5101, defines "Capitol Buildings" as including "the United States Capitol." This definition applies throughout the chapter, to include the charges in Counts seven and nine, detailed below.

The maximum penalties for Disorderly Conduct in a Capitol Building are:

1. A term of imprisonment of not more than 6 months;
2. A term of probation of not more than 5 years;
3. A fine not to exceed $5,000; and
4. A special assessment of $10.

### G. Count Eight: Act of Physical Violence in the Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(F).

To prove that the defendant is guilty of Acts of Physical Violence in the Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(F), the government must prove the following beyond a reasonable doubt:

1. That the defendant engaged in an act of physical violence in the Grounds or any of the Capitol Buildings; and
2. That the defendant did so willfully and knowingly.

Title 40, United States Code, Section 5104(a)(1) defines "act of physical violence" as "any act involving (A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or (B) damage to, or destruction of, real or personal property."

The maximum penalties for Acts of Physical Violence in the Capitol Grounds or Building are:

1. A term of imprisonment of not more than 6 months;
2. A term of probation of not more than 5 years;
3. A fine not to exceed $5,000; and
4. A special assessment of $10.

### H. Count Nine: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

To prove that the defendant is guilty of Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G), the government must prove the following beyond a reasonable doubt:

1. That the defendant paraded, demonstrated, or picketed;
2. That the defendant did so in any of the Capitol Buildings; and
3. That the defendant did so willfully and knowingly.

The maximum penalties for Parading, Demonstrating, or Picketing in a Capitol Building are:

1. A term of imprisonment of not more than 6 months;
2. A term of probation of not more than 5 years;
3. A fine not to exceed $5,000; and
4. A special assessment of $10.

### III. Factual Basis Supporting the Charges.

#### A. The Attack at the U.S. Capitol on January 6, 2021.

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police ("USCP"). Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of

the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.     As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5.     At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.     At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.  The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.  The proceedings resumed at approximately 8:00 p.m. after the building had been secured.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### B.  *Anthony Mastanduno's Participation in the January 6, 2021, Capitol Riot*

8.     On January 6, 2021, Anthony Mastanduno ("MASTANDUNO") was wearing a red baseball cap with a patch on the bill and "Trump 2020 Keep America Great!" embroidered in white thread, a camouflage jacket, and a backpack.  At times, he also donned large, clear goggles with a blast elastic strap.

9.     Around 2:17 p.m. on January 6, 2021, MASTANDUNO entered the U.S. Capitol Building through the Senate Wing Door, approximately four minutes after it was first breached by rioters who smashed windows and climbed in through them.  Then, approximately five minutes later, around 2:21 p.m., MASTANDUNO was at the front of a line of rioters who overwhelmed police officers in the Crypt.  MASTANDUNO left the Capitol Building at around 2:38 p.m.

10.    After exiting the Capitol Building, MASTANDUNO unlawfully remained on Capitol grounds, and eventually made his way to the Capitol's Lower West Terrace.

11.     Beginning at approximately 2:42 p.m., numerous members of the mob attacked members of the USCP and Metropolitan Police Department ("MPD") who were lawfully engaged in the performance of their official duties defending an entrance to the U.S. Capitol on the Lower West Terrace known as "the tunnel." Over the course of more than two hours, members of the mob threw items at police, struck police with items, sprayed police with chemical irritants, pushed against the police, dragged uniformed officers into the crowd, and stole items from the police defending the tunnel.

12.     At the Lower West Terrace, at around approximately 4:30 p.m., MASTANDUNO began engaging with fellow rioters and participated in coordinated attacks on uniformed MPD who were defending the tunnel.

13.     First, MASTANDUNO picked up and threw a blue, flagpole-like object into the mouth of the tunnel, as if throwing a javelin or spear toward the line of outnumbered police officers who were defending the Capitol against the mass of rioters.

14.     Within minutes, MASTANDUNO then obtained a police shield that had been stolen from the officers, which he used to push against the same line of officers at the mouth of the tunnel. While he pushed, he also utilized a telescoping baton, which can be worn on one's hip and which expands in length, to strike at officers multiple times.

15.     By approximately 4:45 p.m., MASTANDUNO abandoned his position at the mouth of the tunnel after being sprayed with a chemical irritant spray.

**IV.     Preliminary Calculation of Defendant's Applicable Sentencing Guidelines.**

   ***A.   Defendant's Estimated Sentencing Range Under U.S. Sentencing Guidelines Manual.***

Mastanduno maintains that his total sentencing guideline range should be determined under U.S.S.G. § 2A2.4, not § 2A2.2.  Under § 2A2.4, his total offense level is 11.  With a total offense

level of 11, and a criminal history category of I, his guideline range is 8 to 14 months. Additionally, pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine in this matter, the advisory range for any such fine is between $4,000 and $40,000.

### B. Government's Estimated Sentencing Range Under the U.S. Sentencing Guidelines Manual.

The government disagrees with the defendant on the applicable guidelines and submits that, as this Court has previously held, the aggravated assault guideline (U.S.S.G. § 2A2.2(a)) will applies to Counts Two and Three, the Section 111(a) - (b) charges. *See, e.g., United States v. Robert Palmer*, No. 21-CR-00328 (TBC), ECF 33 (Sent. Tr.) at 8-9.[1] Thus, based on the preliminary calculations performed by the government, pursuant to U.S.S.G. § 5, Part A, the government submits that the defendant's total combined offense level, with acceptance of responsibility, is 26, his criminal history category is I, and his estimated sentencing Guidelines Range is 63 to 78 months' imprisonment. In addition, pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine, at Guidelines level 27, the estimated applicable fine range is $25,000 to $250,000. The United States reserves the right to amend its position regarding the above sentencing guidelines estimates between now and the time of sentencing—including, but not limited to, the right to request an upward departure pursuant to U.S.S.G. § 3A1.4.

---

[1] There, the Court calculated the guidelines as follows: "The applicable guideline for Count Three, Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b), is §2A2.2(a), which has a base offense level of 14. Because dangerous weapons, including a plank and a fire extinguisher, were used in the commission of the charged offense, the offense level is increased by four, for a new total of 18 per §2A2.2(b)(2)(B). Because Mr. Palmer was convicted under 18 U.S.C. § 111(b), the offense level is increased by two points, for a new total of 20 per §2A2.2(b)(7). Because Mr. Palmer's conduct's victim was a government officer or employee, and the offense of his conviction was motivated by that status, the offense level is increased by six, for a new total of 26 per §3A1.2(b)." *Id.*

### *C.  Analysis Pursuant to Missouri v. Frye, 566 U.S. 134 (2012).*

On November 4, 2023, the United States submitted a plea offer by which Mastanduno would enter a guilty plea to an information charging him with one count of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b).  The proposed plea agreement estimated his Sentencing Guidelines to be 46 months to 57 months imprisonment and a possible fine of $20,000 to $200,000. Mastanduno was presented the plea offer by his counsel and they discussed the offer, but ultimately rejected it. Mastanduno was then indicted on December 13, 2023.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

*/s/ Rhett Johnson*
RHETT JOHNSON
Assistant Federal Public
Defender
WV Bar # 12114
Western District of North
Carolina
1 Page Avenue, Suite 210
Asheville, NC 28801
Tel: (828) 232-9992

By:  */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov